**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EDGAR MOSQUERA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 25-CV-10433** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **SERVIAMUSA, PLLC; COREY KAUFFMAN; and RAKIM JIHAAD;** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion to dismiss filed by defendant Serviamusa, PLLC ("Serviam"), (Dckt. #14), and the joint motion to dismiss filed by defendants Rakim Jihaad and Corey Kauffman. (Dckt. #32). For the reasons explained below, the Court denies defendants' motions to dismiss.

## I. BACKGROUND

Edgar Mosquera brings this civil rights action pursuant to Title VII and 42 U.S.C. §1981 ("Section 1981") against Serviam, his former employer, and his former supervisors, Jihaad and Kauffman (collectively, the "Supervisors"). He also brings a state law assault claim against Kauffman. Mosquera alleges the following facts in his complaint ("Complaint"). (Dckt. #1).

Mosquera is a Hispanic American male originally from Ecuador. (*Id.* ¶7). Mosquera entered into a contract with Serviam (a private security company) that called for him to lease his private security contractor license to Serviam until Serviam could obtain its own license. (*Id.* ¶11). Serviam also hired Mosquera as a salaried employee to maintain its compliance records and to train its employees with the goal of ultimately issuing individual employees with a

firearms control card ("FCC") so that they could perform private security for third parties who contracted with Serviam. (*Id.* ¶11).

On numerous occasions, Mosquera advised Jihaad and Kauffman (his supervisors) that certain Serviam employees were not qualified to undergo the type of advanced firearms training necessary to receive FCC certification. (*Id.* ¶¶14–15). In response, on August 15, 2023, "both Jihaad and Kauffman began shouting profanities at [Mosquera] and called him a 'nigger.' Defendant Jihaad then told [Mosquera] that 'if you don't like it go back to Ecuador, this is America.'" (*Id.* ¶15). On April 15, 2024, after Mosquera questioned Kauffman about his role in a Serviam contract, Kauffman called Mosquera "an 'overly religious stupid nigger' knowing [Mosquera] to be a devout Christian." (*Id.* ¶16).

In August 2024, after Mosquera informed Kauffman that an employee to whom Kauffman had ordered Mosquera to issue an FCC was unqualified to train or receive an FCC, Kauffman called Mosquera "a 'spic' and demanded that [Mosquera] 'start to follow orders.'" (*Id.* ¶17).

After Mosquera refused to train this employee, Serviam's management (including Jihaad and Kauffman) held an emergency meeting on August 16, 2024. (*Id.* ¶19). Jihaad and Kauffman began verbally abusing and shouting profanities at Mosquera, and Kauffman eventually stood up and physically struck Mosquera so hard that the ring flew off Mosquera's finger. (*Id.*). Kauffman then told Mosquera that his "religion can't save you here." (*Id.*). Kauffman was later charged and found guilty of battery in violation of Illinois criminal law. (*Id.* ¶20). In particular, "without legal justification, [Kauffman] knowingly and intentionally made physical contact with Edgar Mosquera in that he attempted to slap Edgar Mosquera in the face and missed his face and struck his hand." (*Id.*).

Despite Mosquera's complaints and the egregious nature of this conduct, Serviam failed to take prompt and effective remedial action to stop the harassment. (*Id.* ¶21). The working conditions became so intolerable due to the continuous racial harassment, retaliation, and physical assault that Mosquera was forced to resign his employment shortly after the August 16, 2024 emergency meeting. (*Id.* ¶22)

Mosquera timely filed a charge of discrimination with the EEOC on or about May 24, 2025. (Dckt. #14-2). The EEOC issued a right to sue letter to Mosquera on June 2, 2025. (Dckt. #1 at 10). Mosquera timely filed this lawsuit within 90 days of his receipt of his right to sue letter on August 31, 2025. (Dckt. #1).

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires a plaintiff to "go beyond mere speculation or conjecture." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025). The complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint that satisfies this standard is 'well-pleaded' and may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Berk v. Choy*, 607 U.S. 187, 193 (2026) (cleaned up); *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (recognizing that the "notice-pleading standard is deliberately undemanding.") (cleaned up). As such, the Federal Rules require "no more than a statement of the claim" without the pleading of evidence to support it. *Berk*, 607 U.S. at 193.

When considering a motion to dismiss under Rule 12(b)(6), the Court "constru[es] the complaint in the light most favorable to the plaintiffs and accept[s] all well-pleaded factual allegations as true." *Horist v. Sudler & Co.*, 941 F.3d 274, 278 (7th Cir. 2019); *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). "[T]he burden of persuasion lies with the moving party . . . to show entitlement to dismissal." *Teva Pharm. USA, Inc. v. Eli Lilly & Co.*, 181 F.4tth 756, 767 (7th Cir. 2026) (cleaned up).

## III. DISCUSSION

Serviam moves to dismiss Mosquera's Title VII claim based on its assertions that: (1) he failed to exhaust his administrative remedies with the EEOC; (2) there are contradictions between his EEOC Charge ("Charge") and his Complaint; and (3) he failed to plead plausible claims of race discrimination, hostile work environment, retaliation, and constructive discharge.[1] All defendants similarly assert that Mosquera has failed to plead a plausible Section 1981 claim against them, and that the Court should decline to exercise supplemental jurisdiction over the state law assault claim against Kauffman.

### A. Mosquera Properly Exhausted His Administrative Remedies Prior to Bringing His Title VII Claim.

It is well-settled that "[b]efore bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Serviam does not dispute that

[1] Although Mosquera pleads his Title VII claims in Counts I through IV *only* against Serviam, (*see* Dckt. #1 at 5–7), the Supervisors devoted more than five pages of their motion toward their argument that the Court should dismiss the Title VII claim against *them*. (Dckt. #32 at 2–7). Even after Mosquera made clear in his response that he was *not* asserting a Title VII claim against the Supervisors, the Supervisors spent more time in their reply arguing that the Court should dismiss the non-existent Title VII claim against them "with prejudice." (Dckt. #37 at 2–3). The Court will not indulge them: there is no need to dismiss a claim that was never asserted and will never be asserted, given Mosquera's understanding that there is no basis in law to assert a Title VII claim against the Supervisors.

Mosquera filed a Charge, received a right to sue letter, and timely filed his lawsuit within the specified 90-day period after his right to sue letter was issued. Nonetheless, Serviam contends that Mosquera's Title VII claim should be dismissed because his "EEOC charge was conclusory and internally contradictory" and "[t]he administrative process was bypassed entirely." (Dckt. 14 at 1–2). As shown below, Serviam is wrong because its contentions ignore the pertinent EEOC regulations and the interpretive case law.

**1. The Content of Mosquera's EEOC Charge Complies with the Pertinent EEOC Regulation.**

The pertinent part of the EEOC regulation governing the "[c]ontents" of Title VII charge" requires the charging party to: (a) state their name; (b) state the name of the entity against whom the charge of discrimination is made; (c) provide a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices; and (d) state the approximate number of employees of the respondent employer. 29 C.F.R. §1601.12(a). With respect to the level of detail that must be provided, the regulation further makes clear that "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. §1601.12(b); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 639 (7th Cir. 2004) (same, *quoting* 29 C.F.R. §1601.12).

Mosquera's Charge complies with these regulatory requirements by identifying the parties to his Title VII claim (namely, himself and Serviam); the pertinent dates of discrimination and the types of unlawful employment practices of which he complained; and the reasons he believed that he was discriminated against. (Dckt. #14-2 at 1–2). He was not required to identify the supervisors who racially harassed him or the particulars of the racial slurs to which they subjected him. Once more, the Charge properly identified the "parties" (Mosquera and

Serviam); the Supervisors are not (and could never be) "parties"; and "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *Flannery*, 354 F.3d at 639 ("Neither the EEOC rules governing charge forms nor the notice pleading requirements mandate a detailed elaboration of the events underlying the plaintiff's claim.").

Serviam's argument to the contrary is without merit. In particular, although Serviam contends that "[c]ourts in this Circuit consistently dismiss such 'skeleton' charges," (Dckt. #14 at 3), the two cases Serviam cites neither support this proposition nor even mention the term "skeleton," and both concern distinguishable facts. In the first case, the Seventh Circuit affirmed the dismissal of plaintiff's Title VII claim against a parent company because plaintiff's EEOC charge named only the subsidiary company and thereby deprived the parent company of notice of the alleged charges against *it* and an opportunity to conciliate them. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126–27 (7th Cir. 1989).

In the second case, plaintiffs alleged one scheme of discrimination in their EEOC charge (namely, that Hispanic and Latino applicants were made to take a basic skills test that other applicants were not required to take and that the discrimination occurred either through the testing itself or thereafter) and a different scheme of discrimination in one count of their complaint (namely, that Hispanic and Latino applicants were discriminated against in the pre-test application process and were "never allowed to begin pre-employment testing"). *Chaidez*, 937 F.3d at 1005–06. The Seventh Circuit affirmed the dismissal of the count of plaintiff's complaint that alleged discrimination in the pre-test application process, but it reversed the dismissal of another count that, consistent with plaintiffs' charge, asserted discrimination in the

testing process. *Id.* at 1006. By contrast, Mosquera does not allege one scheme of discrimination in his Charge and a different scheme of discrimination in his Complaint.

### 2. Mosquera's Request for a Right to Sue Letter Shortly After He Filed His Charge Was Permitted by the Pertinent EEOC Regulation.

As stated above, Mosquera filed his Charge on May 24, 2025, and the EEOC, at his attorney's request, issued a right to sue letter to Mosquera on June 2, 2025. Serviam contends that Mosquera's "near-immediate request for a right-to-sue letter–issued only **nine days** after filing–confirms that he bypassed the administrative process entirely." (Dckt. #14 at 4) (emphasis in original). This argument ignores the governing EEOC regulation and the persuasive caselaw that has upheld the validity of the regulation.

In particular, the governing EEOC regulation provides that the EEOC can issue a notice of right to sue upon the request of the person claiming to be aggrieved "at *any time* prior to the expiration of 180 days from the date of filing of the charge with the Commission," provided that an authorized EEOC official "has determined that it is probable that the Commission will be unable to complete its administrative process of the charge within 180 days from the filing of the charge and has attached a written certification to that effect." 29 C.F.R. §1601.28(a)(2) (emphasis added).

Courts from this Circuit and elsewhere have applied this regulation and found that plaintiffs have exhausted their administrative remedies when as little time as one day has elapsed between when the plaintiff filed their charge and when they requested their right to sue letter. *See, e.g.*, *Gildon v. Ivy Tech Cmty. Coll.*, No. 1:21-CV-1109-JMS-MG, 2022 WL 1104898, at *4–5 (S.D.Ind. Apr. 12, 2022) (holding that §1601.28(a)(2) "permit[ted] the EEOC to issue right-to-sue letters without conducting any review of the case" and finding that "the one-day

turnaround between the charge and the issuance of the right-to-sue letter d[id] not render Plaintiff's proposed Title VII claim futile"); *Dancy v. Jack's Premium Car Wash & Oil Lube, LLC*, No. 09-CV-0965-MJR-DGW, 2011 WL 916616, at *2–3 (S.D.Ill. Mar. 16, 2011) (holding that plaintiff exhausted his administrative remedies even though the EEOC investigator drafted an EEOC charge for plaintiff after interviewing him and then issued "an immediate Dismissal and right-to-sue letter"). These courts and others have upheld the validity of §1601.28(a)(2) against arguments that it is inconsistent with Title VII itself. *Id.*; *Krause v. Turnberry Country Club*, 571 F.Supp.2d 851, 858–61 (N.D.Ill. 2008) (citing cases).[2]

Consequently, the fact that Mosquera, through his counsel, requested and received his right to sue letter nine days after he filed his Charge is not a basis to dismiss his Title VII claims.

### B. The Alleged Factual Contradictions Between the Charge and the Complaint Do Not Require the Dismissal of Mosquera's Title VII Claim.

Nor do the alleged inconsistencies between the Charge and the Complaint provide a basis to dismiss Mosquera's Title VII claims. In particular, Serviam contends that while the Charge "alleged discrimination on multiple bases (race, religion, disability, age), the subsequent federal complaint asserted **only race discrimination** – [and that is] a fundamental inconsistency showing that Plaintiff did not engage the EEOC process in good faith." (Dckt. #14 at 2). There are two problems with this contention. First, Mosquera also alleged discrimination based on his color and retaliation in his Charge, and those two bases are included in his Complaint along with the allegation that he was discriminated against based on his race. More fundamentally, Serviam cites no authority to support the proposition that a plaintiff's Title VII claim is subject to

[2] The Court further notes that plaintiffs need not attach the EEOC's written certification to their complaints to successfully plead a Title VII claim. *See, e.g.*, *Gildon*, 2022 WL 1104898, at *5; *Krause*, 571 F.Supp.2d at 859.

dismissal unless they include every basis of discrimination stated in their charge in their complaint. Such a rule would make no sense. Plaintiffs are not always sure why they were discriminated against when they file an EEOC charge, and the law should not punish them for narrowing the focus of their claims as they exercise strategic judgment or gain further information.

Serviam next cites the discrepancy between the date that Mosquera alleges he was discharged in his Charge (December 31, 2024) and the date he alleges he was discharged in his Complaint (shortly after August 16, 2024) to argue that his constructive discharge claim is not plausible. (Dckt. #14 at 6). However, courts have rejected such arguments, and this Court finds that their rationale for doing so is persuasive. *See, e.g.*, *Albu v. TBI Airport Mgmt.*, No. 1:15-CV-3120-WSD, 2016 WL 3679987, at *4–5 (N.D.Ga. July 12, 2016) (refusing to dismiss a Title VII promotion claim on the ground that there was a discrepancy between the date that plaintiff alleged he was denied a promotion in his charge and the date when he alleged that he was denied a promotion in his complaint) (citing cases); *see also Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003) ("[P]recise pleading is not required for Title VII exhaustion purposes.").

Serviam further asserts—without citing any authority—that the Court should disregard Mosquera's allegation that he was subject to racial slurs prior to August 15, 2024 (the date listed in the Charge as the earliest date discrimination took place). (Dckt. #18 at 5). The Court disagrees. As one court has held, "although many of the incidents that contributed to the hostile work environment did not occur within the date range listed in the EEOC charge, they are all reasonably related to the allegations of the charge and grow out of such allegations. Accordingly, in considering [plaintiff's] hostile work environment claim, the Court can properly consider incidents not fully described or explicitly included in the EEOC charge." *Williams v.*

*Phillips 66 Co.,* 72 F.Supp.3d 938, 955 (S.D.Ill. 2014). Furthermore, the Supreme Court has held that harassing conduct that occurs more than 300 days before a plaintiff's EEOC charge is filed can be considered as part of a plaintiff's hostile environment claim, so long as at least one act of harassment occurs within the 300-day period prior to when the charge is filed. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–21 (2002).

Finally, Serviam asserts that Mosquera's Title VII claim must be dismissed to the extent that it is based on national origin discrimination because he does not mention that he was discriminated against based on his national origin in his Charge. (Dckt. #18 at 5). To begin, it would be procedurally inappropriate to dismiss any of Mosquera's Title VII claims based on his alleged inability to prove the claims on one theory of liability (national origin discrimination) so long as he successfully alleges at least one other plausible theory of liability (race discrimination), which he has done. *Infra*, at Section III(C). As the Seventh Circuit has made clear, "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Rather, the question at the motion to dismiss stage "is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Id.*; *Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025) ("Where a plaintiff states a plausible claim for relief under one discernable legal theory, we start and end there.") (cleaned up).

In any event, it is not at all clear that Mosquera's claims of national origin discrimination are beyond the scope of his Charge given that "courts have interpreted claims of discrimination based upon the plaintiff's status of being 'Hispanic' as being a national origin discrimination claim." *Beltran v. Univ. of Texas Health Sci. Ctr. at Houston*, 837 F.Supp.2d 635, 640–41 (S.D.Tex. 2011) (citing cases). Moreover, "courts should not attempt to draw overly fine

distinctions between race and national origin claims as part of the threshold exhaustion inquiry prior to the full development of a plaintiff's claims, given the potential overlap between the two forms of discrimination, and the loose pleading which is permitted in the EEOC complaint." *Deravin*, 335 F.3d at 202 (cleaned up).

### C. Mosquera Has Plausibly Alleged Disparate Treatment, Hostile Environment, Retaliation, and Constructive Discharge Claims Under Title VII and Section 1981.

Defendants assert that Mosquera's Complaint should be dismissed because he has failed to allege plausible race discrimination, hostile environment, retaliation, and constructive discharge claims under both Title VII and Section 1981. As explained below, the Court disagrees.

To begin, the Court notes that "[t]o survive a motion to dismiss, [Mosquera] need only 'allege enough facts to allow for a *plausible* inference that [an] adverse action suffered was connected to [his] protected characteristics.'" *Chestnut v. Chicago Pub. Schs.*, No. 23 CV 4230, 2024 WL 4894285, at *4 (N.D.Ill. Nov. 26, 2024), *quoting Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (emphasis added in *Kaminski*); *Williams v. Dart*, 967 F.3d 625, 639 (7th Cir. 2020) (There is "no requirement that complaints contain all of the evidence needed to prevail at trial.") (cleaned up). Moreover, because "[t]he legal analysis for discrimination claims under Title VII and §1981 is identical," the Court will largely merge the discussion of the respective claims under both statutes. *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015).

#### 1. Mosquera Has Plausibly Alleged A Disparate Treatment Claim Under Title VII.

Serviam asserts that Mosquera has failed to state a plausible disparate treatment claim under Title VII because he failed to "allege a materially adverse employment action caused by

discriminatory animus." (Dckt. #14 at 4). However, the creation of a hostile work environment and a constructive discharge are adverse employment actions under Title VII,[3] and Mosquera (as explained below) has plausibly alleged that defendants created a racially hostile work environment and constructively discharged him based on his race. Consequently, Mosquera has plausibly alleged a disparate treatment claim under Title VII.

### 2. Mosquera Has Plausibly Alleged A Hostile Work Environment Claim Against Defendants.

"To prove a claim for hostile work environment based on race, an employee must show that: (1) he [or she] was subject to unwelcome harassment; (2) the harassment was based on his [or her] race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016) (cleaned up). Nonetheless, employment discrimination plaintiffs "need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019). Nor are they required to plead all of the evidence needed to fend off a summary judgment motion or to prove their claims at trial. *Williams*, 967 F.3d at 639.

Instead, "to survive a motion to dismiss, 'a plaintiff need only plead facts sufficient to support the conclusion that []he was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of h[is] employment altered for the worse.'" *Amaya v. Ballyshear LLC*, 295 F.Supp.3d 204, 224 (E.D.N.Y. 2018), *quoting Patene v. Clark*,

[3] *See, e.g.*, *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) ("A constructive discharge constitutes an adverse employment action."); *Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) ("[I]t is well established that conditions of employment that are designed to harass and humiliate employees because of their race are actionable adverse employment actions under Title VII.").

508 F.3d 106, 113 (2d Cir. 2007). Moreover, to subject individuals to liability under Section 1981, a plaintiff must allege that each individual defendant was personally involved in the creation of the hostile work environment. *Id.* at 225 (citing cases); *Hamilton v. County of Onondaga, New York*, No. 5:15-cv-01333 (BKS/TWD), 2018 WL 4554496, at *15 (N.D.N.Y. Sept. 21, 2018).

To recap, Mosquera alleges that his Supervisors (Kauffman and Jihaad) repeatedly called him racial slurs (namely, "spic" and "nigger"); that both verbally abused him with profanities on multiple occasions; that one of them (Jihaad) told him that "if you don't like it go back to Ecuador, this is America" (another derogatory racial remark)[4]; and that one of them (Kauffman) physically battered him during the course of an August 16, 2024 emergency meeting.

The Seventh Circuit has recognized that the repeated use of racial slurs by supervisors with direct authority over a plaintiff employee can "quickly alter the conditions of employment and create an abusive working environment." *Robinson v. Perales*, 894 F.3d 818, 828 (7th Cir. 2018) (cleaned up); *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 814–15 (7th Cir. 2022). This is particularly so where the supervisors utter a racial slur (here, "spic") that is particularly offensive to a person of a plaintiff's racial group. *See Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 950-51 (7th Cir. 2005) ("We find it difficult to imagine epithets [namely, spic and wetback] more offensive to someone of Hispanic descent than those directed at Cerros.") (citing cases); *Ortiz v. Sch. Bd. of Broward Cnty., Fla.*, 780 Fed.Appx. 780, 785 (11th Cir. 2019) (same). Moreover, the harassment culminated with Kauffman's commission of a battery on Mosquera during a heated emergency meeting Mosquera had with the Supervisors. These allegations are more than sufficient to plausibly allege the existence of a hostile work environment.

[4] *See Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1042 (7th Cir. 2002) (characterizing statement "Go Back to Mexico" as a "racial remark[]" to a Hispanic employee).

Defendants' arguments to the contrary are unavailing. First, they assert that the harassing conduct alleged by Mosquera is insufficiently severe or pervasive to constitute a hostile environment. (*See* Dckt. #32 at 9 (citing cases decided on summary judgment)). However, "this is a factual question that is generally inappropriate for the Court to determine on a motion to dismiss," *Amaya*, 295 F.Supp.3d at 224, and it is well-settled that Mosquera was not required to include in his complaint "all of the evidence needed to prevail at trial" or survive a summary judgment motion. *Williams*, 967 F.3d at 639.

Second, although it is well-settled that hostile environment claims based on race are within the scope of Section 1981 and that Hispanics are treated as a race under that statute,[5] defendants assert that Mosquera has failed to allege that his race was the "but for" cause of the injury he suffered on account of the hostile environment. Not so. The Court can reasonably infer from the allegations of the Complaint that the Supervisors showered Mosquera with profanity, racial slurs, and racial remarks because of his race. The Supervisors are certainly free to explain their side of the story at trial, but the Court must credit the allegations of the Complaint at this juncture.

Next, the Supervisors' effort to minimize the impact of their racial slurs by asserting that Mosquera could not have been offended by being called a "nigger" and a "stupid nigger" because he is a "light skinned" Hispanic and not Black, (Dckt. #37 at 7–8), is presumptuous and offensive in its own right. To begin, Mosquera alleges that *all* of the racial slurs were harassing conduct that "unreasonably interfered with [his] work performance and altered the conditions of his employment, creating an objectively hostile and abusive working environment." (Dckt. #1

---

[5] *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004); *Amaya*, 295 F.Supp.3d at 224 (citing *Vill. of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016)) ("[I]t has long been settled . . . that Hispanics comprise a distinct race for the purposes of §1981.").

¶¶31, 32). His allegation must be accepted as true for purposes of defendants' motions to dismiss.

More broadly, no case (to this Court's knowledge) has held that that a supervisor's use of the N-word to Hispanic employees is non-offensive as a matter of law. To the contrary, it is apparently not uncommon for bigoted supervisors to pair the N-word with other anti-Hispanic racial slurs and remarks, and courts have considered all of the racial slurs used in determining whether Hispanic employees have been subjected to a hostile work environment. *See, e.g.*, *Calvillo v. Tyson Foods, Inc.*, No. CV 07-S-776-NE, 2009 WL 10688893, at *3 (N.D.Ala. Jan. 26, 2009) (a supervisor, among other things, told plaintiff, who was a Mexican immigrant, to "go back to Mexico, we don't want niggers like you"); *Equal Emp. Opportunity Comm'n v. Albertson's LLC*, 247 F.R.D. 638, 641 (D.Colo. 2007) (plaintiff who was born in Mexico and of Mexican-Hispanic origin was targeted with ethnic slurs and comments including "[n]igger," "fucking nigger," "dumb Mexicans," and "lazy Mexicans," and "go back to Mexico"); *Valdez v. Big O Tires, Inc.*, No. CV-04-1620-PHX-JAT, 2006 WL1794756, at *3 (D.Ariz. June 27, 2006) (supervisor targeted Mexican-American plaintiff with racial slurs including "wetback," "sand nigger," and "spic").[6]

Finally, although the Supervisors correctly acknowledge that they can be subject to individual liability under Section 1981 if they personally participated in the creation of a hostile

---

[6] The cases cited by the Supervisors are factually distinguishable and do not support their proposition. In one case, the plaintiff, who was white, did "not allege that he was the target of any racial slurs, epithets, or other overtly race-related behavior." *Yanick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). Another case states that "[t]he fact that one's coworkers do or say things that offend one, however deeply, does not amount to harassment if one is not within the target area of the offending conduct – if, for example, the speech or conduct is offensive to women and one is a man, or offensive to whites and one is a black." *Yuknis v. First Student, Inc.*, 481 F.3d 552, 554 (7th Cir. 2007). In contrast to *Yuknis*, Mosquera was *the* target of the racial slurs and he, as a Hispanic man, was offended by being called the N-word by his supervisors.

environment, (Dckt. #37 at 5), they assert—without citing any authority—that their conduct should be "disaggregated" so that they are accountable only for their own personal actions. Contrary to the Supervisors' assertion, individuals who are personally involved in the creation of a hostile work environment may be held jointly and severally liable under Section 1981 because "when it comes to hostile work environment claims, the unlawful employment action is the environment itself, viewed as an indivisible whole." *Herbert v. Architect of Capitol*, 839 F.Supp.2d 284, 300 (D.D.C. 2012); *Watts v. Laurent*, 774 F.2d 168, 179 (7th Cir. 1985) ("It is axiomatic that where several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury.").

**3. Mosquera Has Plausibly Alleged Retaliation Claims Against Defendants.**

Defendants seek dismissal of Mosquera's retaliation claims on the grounds that he failed to allege that he engaged in any protected conduct and because he has not identified any materially adverse action that followed his complaints about the discrimination he was experiencing. Neither argument has merit.

With respect to the issue of whether Mosquera engaged in protected conduct, defendants focus on his allegation that he complained about having to train unqualified employees for FCC certification (which is not statutorily protected conduct), but they ignore his allegation that he "complained about the discriminatory conduct" (which is protected conduct). (Dckt. #1 ¶36 ("Plaintiff engaged in statutorily protected activity when he refused to train unqualified employees for FCC certification and/or complained about discriminatory conduct.")).

With respect to defendants' second argument, the materially adverse action element of a retaliation claim can be satisfied by showing evidence of the "intensification of a pre-existing hostile environment." *Quiles-Quiles v. Henderson*, 439 F.3d 1, 8 (1st Cir. 2006); *Garcia v. State*

*Ins. Fund Corp.*, 169 F.4th 13, 24 (1st Cir. 2026) (same). Here, Mosquera plausibly alleges that the hostile work environment intensified after his complaints when Serviam failed to take prompt and effective remedial action to stop the harassment and he was verbally abused with profanities and physically attacked by Kauffman at the August 16, 2024 emergency meeting. (Dckt. #1 ¶¶19, 21, 22).

**4. Mosquera Has Plausibly Alleged a Constructive Discharge Claim Against Defendants.**

It is well-settled that the "[c]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge" claim. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004). Moreover, to establish a constructive discharge under this theory, a plaintiff must "show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress . . . thereby allowing an employer to address a situation before it causes the employee to quit." *Chapin*, 621 F.3d at 679 (cleaned up).

Defendants assert that Mosquera has failed to plead a plausible hostile environment claim, and that he has, in any event, failed to allege the sort of "aggravated" hostile environment that is necessary to support a constructive discharge. As stated above, Mosquera has alleged a plausible hostile environment claim. Moreover, his allegation that he was subject to an intensifying hostile environment that culminated in him being physically attacked by Kauffman is sufficient aggravated conduct to support a plausible constructive discharge claim. *See, e.g.*, *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 877 (7th Cir. 1999) ("We have characterized as intolerable working conditions that involved a series of escalating sexual remarks culminating in a physical assault and death threat."); *Cabrera v. CBS Corp.*, No. 17-CV-6011 (CM), 2018 WL 1225260, at *7 (S.D.N.Y. Feb. 26, 2018) ("A work environment that puts an employee at

'unreasonable risk of physical harm' is sufficiently intolerable to support a claim of constructive discharge."); *E.E.O.C. v. Freemen*, No. 3:06-0593, 2009 WL 4975280, at *16 (M.D.Tenn. Dec. 21, 2009) ("The Court finds . . . that Baker's escalating harassment ending in an assault, along with Whirlpool supervisors' ineffective intervention, created working conditions so intolerable that a reasonable person would have felt compelled to resign.").

**5. The Court Will Retain Jurisdiction Over Mosquera's Assault Claim Against Kauffman.**

Given the Court's finding that Mosquera has plausibly pleaded Title VII and Section 1981 claims against defendants, there is no reason for the Court to relinquish supplemental jurisdiction over Mosquera's state-law assault claim. Accordingly, the Court declines to dismiss Mosquera's state-law assault claim.

## CONCLUSION

For the reasons stated above, the Court denies defendants' motions to dismiss. (Dckt. ##14, 32). Defendants are ordered to answer Mosquera's complaint by October 20, 2026.

**Date: September 29, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**